1 **KAZEROUNI LAW GROUP, APC**
Gustavo Ponce, Esq. (SBN: 15084)
2 gustavo@kazlg.com
Mona Amini, Esq. (SBN: 15381)
3 mona@kazlg.com
6940 S. Cimarron Road, Suite 210
4 Las Vegas, Nevada 89113
Telephone: (800) 400-6808
5 Facsimile:  (800) 520-5523

6 *Attorneys for Plaintiff,*
Pamela Claus
7

8 **UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

9 | PAMELA CLAUS and VIRGINIA | Case No.: |
JOHNSON GRUVER. on behalf of
10 herself and all others similarly situated, |

**CLASS ACTION COMPLAINT FOR**
11           Plaintiff, | **VIOLATIONS OF THE**
**TELEPHONE CONSUMER**
12   vs. | **PROTECTION ACT,47 U.S.C §§ 227,**
**ET SEQ. (TCPA)**
13 CHW GROUP, INC. d/b/a CHOICE
HOME WARRANTY,
14
          Defendant.
15
**DEMAND FOR JURY TRIAL**
16

17

18 ///

19 ///

20 ///

21

22

23

24

25

26

27

28

Plaintiff PAMELA CLAUS ("Claus") and VIRGINIA JOHNSON GRUVER ("Johnson") (together referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant CHW GROUP INC. d/b/a CHOICE HOME WARRANTY ("Defendant"), to secure redress, including damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant in negligently and/or willfully contacting Plaintiffs on their telephones in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*. (the "TCPA"), and related regulations, including the Internal Do Not Call and National Do Not Call provision of 47 C.F.R. § 64.1200(c). As to each class, Defendant invaded Plaintiffs' and similarly situated individuals' privacy.

## INTRODUCTION

1.   Plaintiffs brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, challenging Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff and the members of the proposed Class' (as defined below) (collectively, the "Class Members") on their cellular telephones, thereby invading Plaintiff's privacy.

2.   Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs alleges on personal knowledge.

3.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

4.   Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

5.   Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant's named herein.

6.   In response to Defendant's unlawful conduct, Plaintiffs seek an injunction

requiring (a) Defendant to cease all unsolicited artificial and prerecorded voice phone calls; (b) Defendant to cease all unsolicited voice phone calls and text messages to numbers on the National Do Not Call Registry ("DNC"); and (c) Defendant to cease all unsolicited voice phone calls and text messages to numbers on the Defendant's internal Do Not Call Registry, as well as an award of statutory damages to the members of the Class (defined below) per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## JURISDICTION AND VENUE

7.     This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

8.     Personal jurisdiction is established because Defendant conducts business in the State of Nevada. At all times relevant herein, Defendant conducted business in the State of Nevada, and within this judicial district.

9.     Personal jurisdiction and venue are proper in the District of Nevada pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein occurred within this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff Claus' privacy by contacting Plaintiff Claus on her cellular telephone, while Plaintiff Claus resided in Las Vegas, Nevada, which is within this judicial district.

10.    Venue is proper in the United States District Court for the District of Nevada pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

    a) Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

    b) Defendant does substantial business within this district;

    c) Defendant is subject to personal jurisdiction in this judicial district

because Defendant has availed itself of the laws and markets within this district; and,

d) the harm to Plaintiff Claus originated from within this judicial district.

## PARTIES

11.    Plaintiff is, and at all times mentioned herein was, a resident of the State of Nevada, County of Clark.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

12.    Defendant is a corporation formed under the laws of the State of New Jersey, with its principal address located in Edison, New Jersey.  Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

13.    At all times relevant, Defendant conducted business in the State of Nevada and within this judicial district.

## TCPA BACKGROUND

14.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

15.    The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."  Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012).

16.    21.    Specifically, the TCPA restricts telephone solicitations (i.e., telemarketing), as well as violations of the TCPA's National Do Not Call provision of 47 C.F.R. § 64.1200(c).

17.    In enacting the TCPA, Congress intended to give consumers a choice as

to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

18.    Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. *Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

19.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions.  A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

20.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

21.     47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

22.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

23.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. at 14098 ¶ 141, 2003 WL 21517853, at *49).

24.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.  *Id*.

25.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

26.     If a call is not deemed telemarketing, a defendant must nevertheless

CLASS ACTION COMPLAINT

demonstrate that it obtained the plaintiff's prior express consent.  See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

27.    The United States Court of Appeals for the Ninth Circuit has held, "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp*., No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

28.    As of October 16, 2013, unless the recipient has given prior express written consent,  the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

·    Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

·    Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

·    Prohibit solicitations to residences that use an artificial voice or a recording.

·    Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

·    Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

CLASS ACTION COMPLAINT

·    Prohibit autodialed calls that engage two or more lines of a multi-line business.

·    Prohibit unsolicited advertising faxes.

·    Prohibit certain calls to members of the National Do Not Call Registry ("DNC").

29.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc*., 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

30.    With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*.  Thus, any second call placed to a wrong number violates the TCPA.

31.    Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

32.    The right to revocation is consistent with the common law principle that

consent is revocable and honors the purpose of the TPCA.

33.    The TCPA provides for damages in the amount of $500 for each negligent violation and treble damages of $1,500 for each knowing or willful violation. See 47 U.S.C. § 227(b)(3).

34.    The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

35.    Since 2003, persons who register cell phone numbers on the National Do Not Call Registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the National Do Not Call Registry. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

36.    47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

37.    Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

## JOHNSON FACTUAL ALLEGATIONS

38.    Plaintiff Johnson re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

39.    In Defendant's overzealous attempt to market its services, however, Defendant willfully or knowingly made unsolicited telemarketing calls without the

KAZEROUNI
LAW GROUP, APC

prior express written consent of the Plaintiff Johnson and the Class Members who were recipients of such telephone solicitations.

40. Through this conduct, Defendant has violated the TCPA and invaded the privacy of Plaintiff Johnson and the members of the Class.

41. At all times relevant, Plaintiff Johnson was a citizen of the State of Arkansas. Plaintiff Johnson is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

42. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39). Upon information and belief, Defendant made numerous unsolicited calls, to Plaintiff and the Class members.

43. At all relevant times, Plaintiff Johnson was assigned, and was the owner of, a cellular telephone number of ending in 0720 ("Johnson Cell Phone"). Plaintiff Johnson is the sole user and/or subscriber of the Johnson Cell Phone.

44. Plaintiff Johnson's Cell Phone is a residential telephone number.

45. Plaintiff Johnson's Cell Phone is used for residential purposes and is used for personal purposes.

46. Plaintiff Johnson's Cell Phone is not associated with a business.

47. Plaintiff Johnson registered the Johnson Cell Phone, telephone number ending in 0720, with the DNC on January 7, 2006.

48. Plaintiff Johnson's cellular telephone number ending in 0720 has thus been on the DNC since January 7, 2006.

49. Plaintiff was receiving multiple phone calls from Defendant prior to May 11, 2023, so on May 11, 2023, Plaintiff sent Defendant an email titled "DO NOT CALL ME" and in the email Plaintiff told Defendant "I have had many calls form you and I have asked you numerous times to stop calling me" and gave Defendant her number.

50. On October 31, 2023, at approximately 11:38 am, Plaintiff Johnson received a call to her Cell Phone from Defendant from 501-214-0183. Upon information and belief, the 501-214-0183 number belongs to or are utilized by and/or

on behalf of Defendant.

51.    On November 1, 2023, Plaintiff Johnson received two (2) calls to her Cell Phone from Defendant from 501-214-0183 (at approximately 12:27 pm and 4:07 pm). Plaintiff answered the second call where Defendant attempted to sale Plaintiff Johnson home warranty. While on the phone Defendant sent Plaintiff Johnson and email which confirmed that the caller was Defendant. While on the call with Defendant, Plaintiff Johnson told Defendant to stop contacting her.

52.    On November 1, 2023, Plaintiff Johnson replied to Defendant two times telling Defendant to stop contacting her, letting Defendant know that she has not requested any information form Defendant and has asked previously to not be contacted.

53.    Defendant made or caused to be made, by themselves or through an intermediary or intermediaries, numerous calls to the 0720 Number without Plaintiff Johnson's prior express written consent.

54.    Plaintiff Johnson did not provide Defendant with her cellular telephone number at any point in time, nor did Plaintiff Johnson give permission for Defendant to call her cellular telephone number.

55.    Plaintiff Johnson did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

56.    Plaintiff Johnson did not have a personal relationship with Defendant at any point in time.

57.    Plaintiff Johnson did not give Defendant prior express invitation or consent in writing for Defendant to send text messages to Plaintiff Johnson's cellular telephone for marketing or solicitation purposes.

58.    Because Plaintiff Johnson is alerted by her cellular device, by auditory or visual means, whenever Plaintiff Johnson receives a call, the unsolicited calls that Defendant transmitted to Plaintiff Johnson's cellular device were invasive and intruded upon her seclusion.  Plaintiff Johnson became distracted and aggravated as a result of

receiving Defendant's unsolicited calls.

## CLAUS FACTUAL ALLEGATIONS

59.     Plaintiff Claus re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60.     In Defendant's overzealous attempt to market its services, however, Defendant willfully or knowingly made phone calls and conducted (and continues to conduct) unsolicited and automated telemarketing text messages without the prior express written consent of the Plaintiffs and the Class Members who were recipients of such telephone solicitations.

61.     Further Defendant has placed calls using a prerecorded and or artificial voice without Plaintiff Clause and the Class Members' consent.

62.     Through this conduct, Defendant has violated the TCPA and invaded the privacy of Plaintiff Claus and the members of the Class.

63.     At all times relevant, Plaintiff Claus was a citizen of the State of Nevada. Plaintiff Claus is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

64.     Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39). Upon information and belief, Defendant made numerous unsolicited text messages, including text messages using an automated system, to Plaintiff and the Class members.

65.     At all relevant times, Plaintiff Claus was assigned, and was the owner of, a cellular telephone number of ending in 2774 ("Claus Cell Phone"). Plaintiff is the sole user and/or subscriber of her Claus Cell Phone.

66.     Plaintiff Claus's Cell Phone is a residential telephone number. [1]

---

[1] Cellular telephones used for personal and business purposes are presumitvely "residential" for the purposes of the TCPA, 47 USCS § 227(c). *See* Chennette v. Porch.com, Inc. 50 F.4th 1217 (9th Cir. 2022)*;Lyman v. Quinstreet, Inc*., No. 23-cv-05056-PCP, 2024 U.S. Dist. LEXIS 123132, at *8 (N.D. Cal. July 12, 2024). The

67.    Plaintiff Claus' Cell Phone is used for residential purposes and is used for personal purposes.

68.    Plaintiff Claus' Cell Phone is not associated with a business.

69.    Plaintiff Claus registered the Claus Cell Phone, telephone number ending in 2774, with the DNC on August 3, 2016.

70.    Plaintiff Claus' cellular telephone number ending in 2774 has thus been on the DNC since August 3, 2016.

71.    Between February 3, 2024, and February 12, 2024, Defendant contacted Plaintiff Claus six (6) times because Plaintiff Claus' agreement with Defendant was going to expire on or around April 16, 2024.

72.    On February 12, 2024, at approximately 3:31 pm Plaintiff Claus called Defendant and requested to not be called or contacted anymore and was revoking her consent to be contacted by Defendant.

73.    On February 16, 2024, Defendant called Plaintiff Claus once more.

74.    On that same day, February 16, 2024, at 10:29 am, Plaintiff Claus called Defendant requesting that Defendant no longer contact Plaintiff Claus and Defendant confirmed that Plaintiff Claus was placed on a Do Not call list.

75.    On March 5, 2024, Defendant sent Plaintiff Claus one (1) text message from Defendant.

76.    On March 15, 2024, at approximately 7:46 am, Plaintiff Claus received an automated text message from the phone number 973-604-0745. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message

---

FCC's policy is that "cellular numbers that [have been] placed on the [Do Not Call] registry [are] presumed to be residential." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (citing In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003)) (finding that plaintiff "properly alleged that his cellphone [was] a residential line" by alleging that he (1) "placed his cellular phone number on the National Do Not Call registry" and (2) "use[d] his cell phone as his residential line").2003 TCPA Order, the FCC concluded that a cell phone registered on the do-not-call registry is presumptively a residential phone. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 2003

read "*Your Choice Home Warranty is Expiring Soon. Renew Today and Get 2 Months of Coverage at NO COST to You! 1-888-373-0963. Make Sure Your Home is Covered!*" showing the text message was coming from Defendant.

77. On March 30, 2024, at approximately 7:56 am, Plaintiff Claus received an automated text message from the phone number 732-702-5496. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message read "*Your Choice Home Warranty is Expiring Soon. Make Sure Your Home is Covered! Renew Now and We'll Give You Roof Coverage at NO EXTRA COST! 1-888-373-0963*" showing the text message was coming from Defendant.

78. On April 4, 2024, at approximately 7:26 am, Plaintiff Claus received an automated text message from the phone number 732-702-5496. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message read "*Your Choice Home Warranty is Expiring Soon. Renew Today and Get 2 Months of Coverage at NO COST to You! 1-888-373-0963. Make Sure Your Home is Covered!*" showing the text message was coming from Defendant.

79. On April 15, 2024, at approximately 12:05 pm, Plaintiff Claus received a call to her Cell Phone from Defendant from 958-314-8751. Defendant left Plaintiff a voice message. Upon information and belief, the 958-314-8751number belongs to or are utilized by and/or on behalf of Defendant.

80. On April 16, 2024, at approximately 8:15 am, Plaintiff Claus received an automated text message from the phone number 732-702-5496. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message read "*Your Choice Home Warranty is Expiring TODAY. Renew Today and Get 2 Months of Coverage at NO COST to You! 1-888-373-0963. Hurry Before You Lose Coverage!*" showing the text message was coming from Defendant.

81. On April 18, 2024, at approximately 8:20 am, Plaintiff Claus received an automated text message from the phone number 732-702-5496. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message

read "*Oops! Your Choice Home Warranty Expired. Renew Today and Get 2 Months of Coverage at NO COST to You! 1-888-373-0963. Make Sure Your Home is Covered!*" showing the text message was coming from Defendant.

82.    On April 26, 2024, at approximately 8:30 am, Plaintiff Claus received an automated text message from the phone number 732-702-5496. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message read "*Your Choice Home Warranty is Expired. Make Sure Your Home is Covered! Renew Now and We'll Give You Roof Coverage at NO EXTRA COST!1-888-373-0963*" showing the text message was coming from Defendant.

83.    On May 3, 2024, at approximately 8:35 am, Plaintiff Claus received an automated text message from the phone number 732-702-5496. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message read "*Your Choice Home Warranty is Expired. Renew Today and Get 2 Months of Coverage at NO COST to You! 1-888-373-0963. Make Sure Your Home is Covered*" showing the text message was coming from Defendant.

84.    On June 11, 2024, at approximately 10:04 am, Plaintiff Claus received an automated text message from the phone number 615-657-4221. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The text message read "*P, it's Choice Home Warranty. Did you know we've covered more than 2,000,000 homes across the USA? We're reaching out about the home warranty quote you requested a while back. Reply YES if interested in this offer or call us--your first month of a home warranty could be free! Text X to end*" showing the text message was coming from Defendant.

85.    On June 11, 2024, Plaintiff Claus received two (2) calls to her Cell Phone from Defendant from 615-657-4221. Upon information and belief, the 615-657-4221 number belongs to or are utilized by and/or on behalf of Defendant.

86.    On June 12, 2024, at approximately 11:26 am, Plaintiff Claus received a call to her Cell Phone from Defendant from 615-657-4221. Upon information and

belief, the 615-657-4221 number belongs to or are utilized by and/or on behalf of Defendant.

87.    On June 14, 2024, at approximately 12:06 pm, Plaintiff Claus received a call to her Cell Phone from Defendant from 702-657-4221. Defendant left Plaintiff a voice message. Upon information and belief, the 702-657-4221numbers belong to or are utilized by and/or on behalf of Defendant.

88.    On June 14, 2024, when Defendant called Plaintiff Claus, Defendant called using a prerecorded message as prohibited by 47 U.S.C. § 227(b)(1).  When Plaintiff listened to the message at the outset of the call, Plaintiff was able to determine that it was a prerecorded message and that she was not speaking to a live representative. *See, Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

89.    On July 11, 2024, Plaintiff Claus received three (3) calls to her Cell Phone from Defendant from 702-930-5670. Upon information and belief, the 702-930-5670 number belongs to or are utilized by and/or on behalf of Defendant.

90.    On July 12, 2024, at approximately 1:29 pm, Plaintiff Claus received a call to her Cell Phone from Defendant from 702-930-5670. Defendant left Plaintiff a voice message. Upon information and belief, the 702-930-5670numbers belong to or are utilized by and/or on behalf of Defendant.

91.    On July 12, 2024, when Defendant called Plaintiff Claus, Defendant called using a prerecorded message as prohibited by 47 U.S.C. § 227(b)(1).  When Plaintiff listened to the message at the outset of the call, Plaintiff Claus was able to determine that it was a prerecorded message and that she was not speaking to a live representative. *See, Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is

speaking to a live human being, or is instead being subjected to a prerecorded message.").

92.    It was evident to Plaintiff Claus that the voice messages she heard was an artificial or prerecorded voice because, *inter alia*: (a) the generic content of the voice message; and (b) the tone, cadence and inflection of the voice message, which sounded to the Plaintiff's ears like a pre-recorded message, rather than a personal voice message that was placed personally for the Plaintiff Claus by a live individual on the line.

93.    Plaintiff Claus has previously received both prerecorded voice messages and regular non-prerecorded voice messages, and Plaintiff Claus is able to differentiate the characteristics and sounds of a prerecorded voice message in contrast to an ordinary voice message left by a live person.

94.    Upon information and belief, and based on the Plaintiff Claus' own personal experience, the voice messages received from Defendant sounded like a prerecorded voice message.

95.    Upon information and belief, Defendant did not make the telephone solicitation calls to Plaintiff in error.

96.    Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227 et seq.

97.    Plaintiff Claus revoked consent to be contacted by Defendant on two occasions: February 12, 2024, and February 16, 2024.

98.    Defendant confirmed on February 16, 2024, that Plaintiff Claus had revoked consent to be contacted by Defendant and was placed on Defendant's internal DNC.

99.    Defendant transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, numerous SMS or MMS text messages to the Claus Cell Phone without Plaintiff Claus' express written consent.

100.    Defendant made or caused to be made, by themselves or through an intermediary or intermediaries, numerous calls to the Claus Cell Phone without Plaintiff Claus' express written consent.

101.    On February 12, 2024, and February 16, 2024, Plaintiff Claus revoked permission for Defendant to text and call her cellular telephone number.

102.    After April 16, 2024, Plaintiff Claus did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

103.    Plaintiff Claus did not give Defendant prior express invitation or consent in writing for Defendant to send text messages to Plaintiff Claus's cellular telephone for marketing or solicitation purposes after February 12, 2024.

104.    Plaintiff Claus did not give Defendant prior express invitation or consent in writing for Defendant to contact Plaintiff Claus's cellular telephone using a prerecorded voice after February 12, 2024.

105.    Because Plaintiff Claus is alerted by her cellular device, by auditory or visual means, whenever Plaintiff Clause receives a call and a text message, the unsolicited calls and text messages that Defendants transmitted to Plaintiff Claus's cellular device were invasive and intruded upon her seclusion. Plaintiff Claus became distracted and aggravated as a result of receiving Defendant's unsolicited text messages.

## AS TO BOTH PLAINTIFFS

106.    The aforementioned unsolicited text messages were impersonal form texts sent to numerous persons *en masse*, and not solely to Plaintiffs.

107.    The complained of SMS and/or MMS text messages sent by Defendant to the Cell Phone and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent their messages in

18

order to advertise and market their goods and services, for the purpose of ultimately selling such goods and services to Plaintiffs and other Class Members for commercial profit.

108.     The unsolicited text messages Defendant sent to Plaintiffs and similarly situated members of the Class defined below were sent pursuant to a common telemarketing scheme for which Defendant, or any agent or intermediary acting on their behalf, did not obtain express consent from Plaintiffs and the Class, while their numbers were registered with the National Do Not Call Registry, and therefore violated 47 U.S.C. § 227 et seq., including 47 C.F.R. § 64.1200(c).

109.     Neither Plaintiff Claus nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit them to transmit text messages to the Claus Cell Phone or to any of the Class Members' telephone numbers.

110.     Neither Plaintiffs, as described above, nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit them to transmit call the Cell Phones or to any of the Class Members' telephone numbers.

111.     Neither Plaintiff Claus nor any members of the proposed Class provided their "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to permit them to make calls with prerecorded or artificial voices to the Claus Cell Phone or to any of the Class Members' telephone numbers.

112.     At all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

113.     Each of the above unsolicited telephonic communications by Defendant and/or its agents violated 47 U.S.C. § 227.

114.     Receiving Defendant's repeated unauthorized calls and text messages

drained Plaintiffs' phone battery, consumed space on Plaintiffs' Cell Phones, and caused Plaintiffs additional electric expenses and wear and tear on their phone and battery.

115.    The cumulative effect of unsolicited phone messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

116.    Plaintiffs were personally affected because Plaintiffs were both frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to direct unsolicited and unauthorized calls and text messages to Plaintiffs' Cell Phones.

117.    Defendant's telephonic communications forced Plaintiffs to be deprived of the privacy and utility of her cellular phone by forcing Plaintiffs to ignore Defendant's disruptive calls and text messages, dismiss alerts, and/or silence her their Cell Phones as a result of Defendant's incessant unsolicited calls and text messages.

118.    The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant called and sent the text messages to Plaintiffs without her consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiffs' privacy and violated the spirit and intent behind the TCPA.

119.    Defendant failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

120.    To the extent Defendant outsourced its telemarketing spam text messaging campaigns, it is nonetheless liable for texts that violate the TCPA.

121.    Defendant is liable for third-party actions if it took steps to cause the telemarketing texts to be made, or if the telemarketing texts were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

122.    Defendant had the ability and/or right to control the method and scope of the telemarketing text message campaigns sent to Plaintiff and the Class members.

123.    Defendant had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing text message campaigns sent to Plaintiff and the Class members.

124.    Defendant authorized the use of its trade name in the telemarketing text messages sent to Plaintiff and the Class members.

125.    Defendant knowingly accepted the marketing benefits of the telemarketing text messages sent to Plaintiff and the Class members, including the consumer leads generated through transmissions of the messages.

126.    Given Defendant's control over the telemarketing text messaging campaigns at issue and/or its ratification of the campaigns, Defendant is vicariously liable for the violations alleged herein.

127.    Defendant failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

128.    Defendant's violations caused Plaintiffs to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

129.    Through the aforementioned conduct, Defendant repeatedly violated the

TCPA, 47 U.S.C. §§ 227, *et seq*., numerous times.

130. Defendant's unsolicited phone calls and messages caused Plaintiffs actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

131. Defendant's phone calls and messages also inconvenienced Plaintiffs and caused disruption to Plaintiffs' daily life.

132. Defendant's unsolicited phone calls and messages caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they each spent numerous hours investigating the unwanted phone calls and messages.

133. Through the above-alleged conduct, Plaintiffs suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

134. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and the Class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq*.

135. On behalf of Plaintiffs and the Class, Plaintiffs seeks an award of statutory damages Plaintiffs and each of the Class members for the unlawful calls, and costs and reasonable attorneys' fees and costs.

## **STANDING**

136. Standing is proper under Article III of the Constitution of the United States of America because Plaintiffs' claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *The "Injury in Fact" Prong*

137. Plaintiffs' injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

KAZEROUNI
LAW GROUP, APC

138.    For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant

    a)  sent numerous unsolicited telephone text messages to Plaintiff Claus' cellular telephone despite Plaintiff Claus registering their telephone numbers with the National Do Not Call Registry. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff Claus. All three of these injuries are concrete and *de facto*.

    b)  made numerous unsolicited phone calls to Plaintiff Johnson's cellular telephone despite Plaintiff Johnson registering her telephone number with the National Do Not Call Registry. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff Johnson. All three of these injuries are concrete and *de facto*.

    c)  made numerous unsolicited phone calls to Plaintiff Claus' cellular telephone despite Plaintiff Claus registering her telephone number with the National Do Not Call Registry. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff Claus. All three of these injuries are concrete and *de facto*.

    d)  made numerous unsolicited phone calls to Plaintiff Claus' cellular telephone despite Plaintiff Clause requesting to no longer be contacted by Defendant. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff Claus. All three of these injuries are concrete and *de facto*.

    e)  sent numerous unsolicited text messages to Plaintiff Claus' cellular telephone despite Plaintiff Clause requesting to no longer be contacted by Defendant. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff Claus. All three of these injuries are concrete and *de facto*.

CLASS ACTION COMPLAINT

f) made numerous unsolicited phone calls to Plaintiff Claus' cellular telephone using a pre-recorded voice despite Plaintiff Clause requesting to no longer be contacted by Defendant. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff Claus. All three of these injuries are concrete and *de facto*.

139. For an injury to be "particularized" means that the injury must "affect the [p]laintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiffs' privacy and peace by (a) directing unsolicited text messages to Plaintiff Claus' cellular telephone despite Plaintiff's registering her telephone number with the National Do Not Call Registry; (b) making unsolicited phone calls to Plaintiffs' cellular telephones despite Plaintiffs' registering their telephone number with the National Do Not Call Registry; (c) making unsolicited phone calls to Plaintiff Claus' cellular telephone despite Plaintiff Clause requesting to not be contacted any more by Defendant; (d) sending unsolicited text messages to Plaintiff Claus' cellular telephone despite Plaintiff Clause requesting to not be contacted any more by Defendant; and (e) making unsolicited phone calls to Plaintiffs' cellular telephones with a prerecorded voice after Plaintiff Clause revoked all consent to be contacted by Plaintiff.

140. Furthermore, Plaintiffs were distracted, inconvenienced, and annoyed by having to take time to see who was calling and texting, ignoring calls and texts, reading Defendant's text messages, and listening to Defendant's voice messages, which consumed space on Plaintiffs' Cell Phones. All of these injuries are particularized and specific to each Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

141. The second prong required to establish standing at the pleadings phase is that Plaintiffs must have suffered an injury in fact that is traceable to Defendants. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

KAZEROUNI
LAW GROUP, APC

142.    Defendant's calls and text messages are directly and explicitly linked to Defendant.  The phone calls and voice messages, indicate Defendant was the one making the phone calls to Plaintiffs. The text messages Defendant sent to Plaintiff Claus indicate they were sent from Defendant. In addition, the text message reference Defendant's name.  Defendant's calls, voice messages, text messages are the source of Plaintiff's and the Class Members' injuries.

### *The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

143.    The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

144.    In the present case, Plaintiffs' Request for Relief includes a request for injunctive relief and statutory damages (a) for each text message made by Defendant to cellular numbers who did not previously consent to receive text messages whose telephone numbers are registered with the National Do Not Call Registry, (b) for each call made by Defendant to cellular numbers who did not previously consent to receive calls whose telephone numbers are registered with the National Do Not Call Registry, (c) for each call made by Defendant to cellular numbers who revoked consent to receive phone calls from Defendant, and (d) for each text message made by Defendant to cellular numbers who revoked consent to receive text messages from Defendant, and (e) for each call made by Defendant using a prerecorded voice to cellular numbers who did not consent to receive such phone calls from Defendant, as authorized by statute in 47 U.S.C. § 227.  The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiffs and the putative Class Members.

145.    Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiffs have each standing to sue Defendant on the stated claims.

### **CLASS ACTION ALLEGATIONS**

146.    Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3)

of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined as follows:

**National DNC Class:**
All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one text message within any twelve-month period (3) from, or made on behalf of, Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within the four years prior to the filing of the Complaint.

**Artificial or Prerecorded Voice Class**:
All persons within the United States (1) who received any artificial or prerecorded voice calls or voicemails, (2) from and/or on behalf of Defendant, (3) to said person's telephone, (4) within the four (4) years prior to the filing of the Complaint.

**Internal DNC Class:**
All persons within the United States who, within the four years prior to the filing of this Complaint, received any telemarketing text message from or on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing text messages**.**

147.    Defendant, their employees, and agents are excluded from the Class.

148.    Plaintiffs reserve the right to modify or expand the definition of the Classes (or add one or more subclasses) as warranted as facts are learned or confirmed after further investigation and discovery.

149.    Plaintiffs and all Class Members have been impacted and harmed by the acts of Defendants or their affiliates or subsidiaries Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiffs and the Class members via their cellular telephones by making unsolicited phone calls, sending unsolicited text message/s, making phone calls with prerecorded voices, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members

previously paid, and invading the privacy of said Plaintiffs and the Class members. Plaintiffs and the Class members were damaged thereby.

150.    This Class Action Complaint seeks injunctive relief and monetary damages on behalf of Plaintiffs and the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

151.    This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b).  This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

152.    Upon application by Plaintiffs' counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

153.    <u>Numerosity</u>.  The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.    Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

154.    <u>Typicality</u>.  Plaintiff Claus is a person who received at least one unsolicited text message from Defendant without Defendant having Plaintiff Claus' "prior express written consent" to send such messages from Defendant within the meaning of the TCPA.  Plaintiffs Claus and Johnson are each a person who received at least one unsolicited phone call from Defendant without Defendant having Plaintiffs "prior express written consent" to make such calls from Defendant within the meaning of the TCPA. Plaintiff Claus is a person who received at least one unsolicited phone call with a pre-recorded voice from Defendant without Defendant having Plaintiff Claus' "prior express written consent" to make such calls from Defendant within the

meaning of the TCPA. Consequently, the claims of Plaintiffs are typical of the claims of the members of the Class, and Plaintiffs' interests are consistent with and not antagonistic to those of the other Class Members she seeks to represent.  Plaintiffs and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

155.   <u>Adequacy</u>.  As Class representatives, Plaintiffs have no interests adverse to, or which conflict with, the interests of the absent members of the Class, and are able to fairly and adequately represent and protect the interests of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiffs may seek leave to amend this Class Action Complaint, amend the Class definition, to add additional Class representatives, or assert additional claims.

156.   <u>Competency of Class Counsel</u>.   Plaintiffs have retained and are represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Plaintiffs' counsel is experienced in handling complex class action claims as well as claims involving violations of the Telephone Consumer Protection Act.

157.   <u>Commonality and Predominance</u>.   There are well-defined common questions of fact and law that exist as to all members of the Class defined above and predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class Member to Class Member and may be determined without reference to the individual circumstances of any Class Member, include (but are not limited to) the following:

> a)    Whether Defendant or affiliates, subsidiaries, or agents of Defendants transmitted advertising or telemarketing text messages to Plaintiff Claus' and Class Members' cellular telephones;

b)  Whether Defendant or affiliates, subsidiaries, or agents of Defendants made advertising or telemarketing phone calls to Plaintiffs' and Class Members' cellular telephones;

c)  Whether, within the four years prior to the filing of this Complaint, Defendant or its agents placed more than one telephone solicitation to the members of the Class whose telephone numbers were on the National Do Not Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

d)  Whether Defendant or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendant obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

e)  Whether Defendant or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendant obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to make phone calls complained of, assuming such an affirmative defense is raised;

f)  Whether Defendant made phone calls to consumers using an artificial or prerecorded voice to any telephone number assigned to a cellular phone service;

g)  Whether Defendant obtained prior express written consent to place telephone solicitations to Plaintiffs or the Class members' telephones;

h)  Whether Defendant violated 47 U.S.C § 227(c)(2);

i)  Whether Defendant violated 47 C.F.R. § 64.1200(d);

j)  Whether Defendant's conduct was knowing and/or willful;

k)  Whether Defendant's conduct violated the TCPA;

l)    Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

m)    Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct; and

n)    Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

158.    <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Even if every member of the Class could afford to pursue individual litigation, the Court system could not.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the TCPA.  The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

CLASS ACTION COMPLAINT

Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

159.    Additionally, the prosecution of separate actions by individual Class Members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests.  The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

160.    Moreover, Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. The violations complained of herein are substantially likely to continue without remedy in the future and Defendant will likely continue such illegal conduct an injunction is not entered.

161.    Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## COUNT I

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S.C. § 227(C)(5) AND 47 C.F.R. § 64.1200(C)**

**(*On behalf of Plaintiffs and the National DNC Class*)**

162.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

163.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national

KAZEROUNI
LAW GROUP, APC

do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

164.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

165.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

166.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

167.    Plaintiffs and members of the Class received more than one marketing text message within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant' goods and/or services without their written prior express consent.

168.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

169.    Defendant sent unsolicited and unauthorized text messages to the cellular telephones of Plaintiffs and the Class members, cellular telephones which were registered with the National Do-Not-Call Registry, for the purpose of marketing goods and/or services to Plaintiffs and the Class.

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

170.    Defendant made calls to the cellular telephones of Plaintiffs and the Class members, cellular telephones which were registered with the National Do-Not-Call Registry, for the purpose of marketing goods and/or services to Plaintiffs and the Class.

171.    Defendant knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

172.    Defendant knew that it did not have prior express written consent to call, and knew or should have known that it was calling cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

173.    Defendant willfully or knowingly allowed text messages to be sent to Plaintiffs' and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiffs and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages and calls.

174.    Defendant's calls and text messages caused Plaintiffs and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

175.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

176.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not

Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200 and 47 U.S.C. § 227(c).

177.    Because Defendant knew or should have known that Plaintiffs' and Class Members' cellular telephone numbers were registered on the National Do-Not-Call Registry, the Court should treble the amount of statutory damages available to Plaintiffs and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

178.    As a result of Defendant' violations, Plaintiffs and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

179.    Plaintiffs and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

180.    Plaintiffs also seek an award of attorneys' fees and costs on behalf of Plaintiffs and the Class.

### **COUNT II**

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S.C. §§ 227, ET SEQ.**

**(*On behalf of Plaintiff Claus and the Prerecorded Class*)**

181.    Plaintiff Claus re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

182.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

183.    Defendant made unsolicited and unauthorized calls to Plaintiff Claus and Class members for the purpose of marketing products and/or services to those Plaintiff and the Class.

184.    Defendant made unsolicited and unauthorized phone calls using an

artificial or prerecorded voice to the cellular telephones of Plaintiff Claus and the Class members for the purpose of marketing products and/or services to Plaintiff and the Class.

185.    Defendant knew or should have known that it did not have prior express written consent to make these calls, and knew or should have known that it was using an artificial or prerecorded voice in violation of the TCPA.

186.    Defendant negligently, willfully, and/or knowingly allowed telemarketing calls to be placed to Plaintiff Claus and Class members utilizing an artificial or prerecorded voice. For instance, Defendant could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff Claus and/or Class members, yet disregarded such information and placed illegal and unwanted solicitation calls to Plaintiff Claus and the Class.

187.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

188.    Defendant's conduct invaded Plaintiff Claus's privacy.

189.    Defendant's conduct was negligent, willful or knowing.

190.    As a result of Defendant's violations, Plaintiff Claus and each of the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and an award of $1,500.00 in statutory damages for each and every willing or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

191.    Plaintiff Claus and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

192.    Plaintiff Claus also seeks an award of attorneys' fees and costs on behalf of Plaintiff Claus and the Class.

# COUNT III

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S.C. §§ 227, ET SEQ.**

**(*On behalf of Plaintiff Claus and the Internal DNC Class*)**

193.    Plaintiff Claus re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

194.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

195.    As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff Claus and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5). 47 C.F.R. § 64.1200(d), in relevant part, provides: "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards including:

> *(1) Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record

the request and place the <u>subscriber</u>'s name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential <u>subscriber</u>'s do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a <u>consumer</u>'s prior express permission to share or forward the <u>consumer</u>'s request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an <u>affiliated</u> entity. . .

(6) *Maintenance of do-not-call lists*. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

196.    Pursuant to 47 C.F.R § 64.1200, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

"(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e)

197.    Plaintiff Claus and Class members made requests to Defendant not to receive telemarketing calls and text messages from Defendant.

198.    Defendant failed to honor Plaintiff Claus's and the internal DNC Class members' opt-out requests.

199.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

200.    Defendant made calls and sent unsolicited and unauthorized telephone messages to the cellular telephones of Plaintiff Claus and the Class members, cellular telephones which were on Defendant's internal DNC.

201.    Defendant knew that it did not have prior express written consent to make

CLASS ACTION COMPLAINT

those calls and send these text messages, and knew or should have known that it was calling and sending text messages to cellular numbers on Defendant's internal DNC in violation of the TCPA.

202.    Defendant willfully or knowingly sent telemarketing text messages to Plaintiff Claus' and Class members' cellular telephone numbers on Defendant's internal DNC. For instance, Defendant could have determined from a review of its own business records that it could not contact Plaintiff Claus and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages.

203.    Defendant willfully or knowingly made telemarketing calls to Plaintiff Claus' and Class members' cellular telephone numbers on Defendant's internal DNC. For instance, Defendant could have determined from a review of its own business records that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation calls.

204.    Defendant's unsolicited calls and text messages caused Plaintiff Claus and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

205.    Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing messages made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

206.    Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

207.    Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

208.    Because Defendant knew or should have known that Plaintiff Claus' and Class Members' cellular telephone numbers were on Defendant's internal DNC, the Court should treble the amount of statutory damages available to Plaintiff Claus and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

209.    Because Plaintiff Claus and members received more than one text message in a 12- month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

210.    Because Plaintiff Claus and members received more than one call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

211.    As a result of Defendant's violations, Plaintiff Claus and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

212.    Plaintiff Claus and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

213.    Plaintiff Claus and class members also suffered damages in the form of invasion of privacy.

214.    Plaintiff Claus also seeks an award of attorneys' fees and costs on behalf of Plaintiff Claus and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as to the **_three classes_**, Plaintiffs respectfully requests the Court grant Plaintiffs and the Class members the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiffs as Class Representative and designating Plaintiffs' counsel as Class Counsel.

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

KAZEROUNI
LAW GROUP, APC

- Statutory damages of $500.00 for Plaintiffs and each member the Class for each and every one of Defendants' violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);
- Statutory damages of $1,500.00 for Plaintiffs and each member the Class for each and every one of Defendants' willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);
- An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

215.    Plaintiffs, individually and on behalf of the Class, demand a jury trial on all issues so triable.


Dated: April 11, 2025                    Respectfully submitted,

                                         **KAZEROUNI LAW GROUP, APC**


                                         By:   _/s/ Gustavo Ponce_
                                         GUSTAVO PONCE, ESQ.
                                         MONA AMINI, ESQ.
                                         6940 S. CIMARRON ROAD, SUITE 210
                                         LAS VEGAS, NV 89113
                                         *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT